**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| LARRY D. MARVEL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 99-113-GMS |
| v. | ) |
| | ) |
| PRISON INDUSTRIES; STANLEY | ) |
| TAYLOR; JOYCE TALLEY; DAVE | ) |
| KAHLILI; ED BOWERS; ED MOORE; | ) |
| and PRISON HEALTH SERVICES, INC. | ) |
| | ) |
| Defendants. | ) |

**ORDER**

1. On March 2, 1999, Larry D. Marvel, a prisoner at the Delaware Correctional Center ("DCC") located in Smyrna, Delaware, filed this action arising out of permanent injuries he allegedly suffered as a result of his employment at the DCC auto body refinishing shop. Specifically, Marvel says he was employed by DCC to spray paint cars without proper safety equipment or ventilation. In his Third Amended Complaint, Marvel recites four counts: cruel and unusual punishment in violation of the Eighth Amendment (Count I); deprivation of due process (Count II); deliberate indifference to a serious medical need (Count III); and a state law cause of action for wanton and reckless conduct (Count IV). (D.I. 154; D.I. 219 at 2.) However, due to various concessions and voluntary dismissals by Marvel, the only remaining defendants are Stanley Taylor, Dave Kalili, Ed Bower and Ed Moore (collectively, the "State Defendants"), and the only remaining counts are Counts I, II, and

      IV.[1]

2.    Presently before the court is the State Defendants' motion for summary judgment. (D.I. 212.) However, in their opening brief, the State Defendants seemed to address only Count I. (See D.I. 213.) Therefore, on September 24, 2004, the court held a teleconference with the parties and requested letter briefs addressing Counts II and IV. (D.I. 285.) After considering all the submissions, the court will deny the State Defendants' motion for summary judgment as to Counts I and IV, and grant their motion as to Count II.

3.    As to the Eighth Amendment claim, the State Defendants argue that their motion for summary judgment should be granted if Marvel cannot show that his work in the auto body shop was compulsory. (D.I. 223 at 7.) Conversely, they say their motion should be denied if Marvel is able show that his work in the auto body shop was compulsory. (Id.) As one might expect, the State Defendants's position is that Marvel was not compelled to work in the auto body shop. But also implicit in their argument is a concession that Marvel, but for is inability to show that his work was compulsory, has otherwise stated a proper Eighth Amendment claim.

4.    However, contrary to the State Defendants' assertion, whether Marvel's work was compulsory or voluntary is not dispositive. In *Bagola v. Kindt*, the Seventh Circuit gave an example of a prisoner "exposed . . . to high levels of nuclear radiation without protective equipment," and held that "the 'voluntary' nature of the employment would not affect our

---

[1] In his brief in opposition to the State Defendants' motion, Marvel agrees that Prison Industries should be dismissed. (D.I. 219 at 20.) Therefore, the court will grant the State Defendants' request that the name "Prison Industries" be removed from the caption of this case (D.I. 213 at 5).

Eighth Amendment analysis." 131 F.3d 632, 645 n.18 (7th Cir. 1997). The court reasoned that "voluntariness ends at the point where cruel and unusual punishments begin. Even while working, . . . employees remain subject, as prisoners, to disciplinary restrictions. Although such cases likely are rare, if a prison official was bent on violating a prisoner's Eighth Amendment rights, the fact that the prisoner participated in a voluntary program would be of little significance." *Id.*

5. As Marvel points out, his refusal to work would have been considered "a direct violation of [Department of Corrections] policy." (Moore Dep. at 29:1-4.) As such, he was subject to "disciplinary restrictions," as discussed in *Bagola*. Thus, the voluntary nature of Marvel's employment at the auto body shop is of "little significance." Furthermore, the fact that Marvel could have, and eventually did, seek another job outside the auto body shop is also of little significance. As Marvel points out in his brief, if not him, *someone* would have worked in the auto body shop. (D.I. 219 at 31.) In other words, the State Defendants cannot escape liability merely because Marvel's job could have been passed to someone less litigious.

6. Moreover, the handful of cases pointed to by the State Defendants or found by the court that rely on the voluntary nature of a plaintiff's employment in denying an Eighth Amendment claim are easily distinguishable. In *Atkinson v. Taylor*, the Third Circuit, in discussing environmental tobacco smoke (ETS) in prison, said, "unlike individuals who voluntarily expose themselves to ETS, a prisoner cannot simply walk out of his cell whenever he wishes." 316 F.3d 257, 268 (3d Cir. 2003). This rationale would be apposite here if Marvel was given the choice to either use or not use the appropriate safety equipment. However,

       viewing the facts in the light most favorable to Marvel, he was given no such choice. Thus, the State Defendants' reliance on *Atkinson* is misplaced.

7. In *Wooten v. Goord*, an unpublished Second Circuit opinion, the plaintiffs challenged the working conditions of the print shop in which they were voluntarily employed. The court held that "*minor* health problems already experienced by plaintiffs - e.g. headaches, nausea, skin irritations - do not give rise to constitutional concerns in a context where the plaintiff inmates knowingly and voluntarily subject themselves to the conditions causing those problems." No. 04-2485-PR, 2005 WL 387971, at *2 (2d Cir. 2005) (emphasis added). Although *Wooten* might seem to hold that voluntarily working in a hazardous work environment bars recovery under the Eighth Amendment, the court also pointed out that it would not bar recovery where the injuries are severe. *Id.* (citing *Bagola*, 131 F.3d at 645 n.18). In the present case, Marvel alleges permanent respiratory and eye injuries that can certainly be characterized as severe.

8. In *LaPena v. Kessel*, another unpublished opinion, the Ninth Circuit upheld a district court's denial of a preliminary injunction against prison officials, where a prisoner alleged an Eighth Amendment violation after voluntarily working in an environment in which smoking was permitted. 54 F.3d 785 (9th Cir. 1995). In considering the injunction, the district court was required to evaluate the threat of irreparable injury to the plaintiff. The Ninth Circuit held that the district court did not abuse its discretion in deciding that the plaintiff had not shown a threat of irreparable injury because the plaintiff could have requested a different job. *Id.* However, the inquiry in the present case is different. The question here is whether the plaintiff has adduced more than a mere scintilla of evidence tending to show an Eighth

Amendment violation, not whether an injunction is necessary to prevent irreparable injury. Thus, *LaPena* is inapposite as well.

9. In *Wilson v. Johnson*, the plaintiff, who allegedly had serious back problems, claimed it was an Eighth Amendment violation for prison officials to assign him to work in the mess hall. The district court granted summary judgment in favor of the prison officials, stating, "there is evidence in the record suggesting that plaintiff was not only willing but anxious to begin his assignment." 999 F. Supp. 394, 399 (W.D.N.Y. Sept. 12, 1997). Although the court viewed the plaintiff's willingness to work in the mess hall as evidence tending to undermine his Eighth Amendment claim, the more probative evidence was the fact that several medical examinations failed to reveal objective symptoms of his alleged ailments. Therefore, based on the entirety of the record, the court held that there was insufficient evidence to support the plaintiff's claim that his work assignment placed him at significant risk of serious harm. *Id.* Importantly, the court did not announce a categorical rule barring Eighth Amendment claims where the plaintiff voluntarily works in a position that leads to injury. Likewise, the fact that the Fifth Circuit, in *Jackson v. Cain*, denied summary judgment to prison officials based on a rule that "prison work requirements which *compel* inmates to perform physical labor which is beyond their strength, endangers their lives, or causes undue pain constitutes cruel and unusual punishment," 864 F.2d 1235, 1246 (5th Cir. 1989) (emphasis added), does not translate into a rule that *only* compelled labor gives rise to Eighth Amendment claims.

10. Based on the court's review of the above cases, the State Defendants are incorrect in arguing that compelled (as opposed to voluntary) employment is a prerequisite to recovery under the Eighth Amendment. Thus, since they implicitly concede the remainder of Marvel's Eighth

      Amendment claim, and since the court finds that there are disputed issues of material fact, even as the involvement (or lack thereof) of defendant Taylor, summary judgment will be denied as to Count I.[2]

11.   As to the substantive due process portion of Count II, the Supreme Court has made it abundantly clear that "[a]ny protection that 'substantive due process' affords convicted prisoners against excessive force is . . . at best redundant of that provided by the Eighth Amendment." *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989). Citing *County of Sacramento v. Lewis*, 523 U.S. 833 (1998), Marvel argues that the State Defendants can nevertheless be held liable for violating his substantive due process rights because alleged violations of those rights are analyzed under a lesser standard of culpability, namely recklessness or gross negligence, rather than deliberate indifference. However, in *Lewis*, the Court held that substantive due process analysis is inappropriate if the plaintiff's claim is

---

[2] Although the State Defendants' concession that their motion should be denied if the compelled/voluntary issue is decided in Marvel's favor necessarily includes a concession as to qualified immunity, the court will briefly address that issue here. An official is entitled to qualified immunity unless that official violated a clearly established constitutional right. *Atkinson*, 316 F.3d at 261. In *Helling v. McKinney*, where the Supreme Court held that exposure to environmental tobacco smoke (ETS) can give rise to an Eighth Amendment claim, even the plaintiff's opponents admitted that exposure to toxic or similar substances (which are much more harmful than ETS) could give rise to an Eighth Amendment claim as well. 509 U.S. 25, 34 (1993). In this case, Marvel alleges he was exposed to spray paint fumes with inadequate safety equipment and inadequate ventilation. It seems quite obvious that this type of exposure is at least potentially as, if not more, harmful than ETS. Thus, a constitutional right was (allegedly) violated. As to whether the right was clearly established, the Third Circuit in *Atkinson* held that a prisoner's right to be free from ETS is clearly established, and therefore, prison officials are not entitled to qualified immunity for violating that right. 316 F.3d at 264-65. That being the case, it must also be the case that the right to be free from exposure to an even more harmful substance is also clearly established. Thus, the State Defendants are not entitled to qualified immunity.

"covered by" a more definite provision of the Constitution.[3] 523 U.S. at 843. In this case, Marvel's claim is "covered by" the Eighth Amendment. Therefore, the court will grant the State Defendants' motion with regard to the substantive due process portion of Count II.

12. As to the procedural due process portion of Count II, Marvel says "he received an 'atypical and significant' punishment in relation to the ordinary incidents of prison life." (D.I. 283 at 3.) Therefore, he argues, he was denied procedural due process under *Sandin v. Conner*, 515 U.S. 472 (1995). The State Defendants, on the other hand, argue that Count II was only intended as a substantive due process claim because it merely alleges that they breached their duty of care and were deliberately indifferent to his safety and well-being. (D.I. 284 at 3.)

13. After reviewing the Third Amended Complaint, the court agrees with the State Defendants. Count II only contains four one-sentence paragraphs, the first three of which allege duty, breach, and causation. (D.I. 154 ¶¶ 62-64.) The fourth paragraph discusses immunity. (Id. ¶ 65.) Nowhere is it alleged that Marvel was deprived of a liberty interest without due process of law. Although Marvel may have had a colorable procedural due process claim, none of the four counts alleges such a claim. The court is cognizant of the liberal pleading requirements established by the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 8. However, in fairness to the State Defendants, they are at least entitled to notice as to the claims being asserted. Therefore, since Marvel did not allege a violation of procedural due process in the Third Amended Complaint, the court will grant the State Defendants' motion as to that portion of Count II as well. *See Morris v. Phila. Hous. Auth.*, No. 95-CV-6650,

---

[3]*Lewis* involved the Fourth Amendment, but the same rule applies when the Eighth Amendment is the provision at issue. *See Lewis*, 523 U.S. at 842-43.

      1996 WL 167615, at *4 ("Defendant is correct that plaintiff may not move for summary judgment on claims not raised in the complaint. . . . Defendants' motion [for summary judgment] as to these claims is granted and the claims are dismissed."), *aff'd*, 106 F.3d 386 (3d Cir. 1996). For the same reason, the court will grant the State Defendants' motion insofar as Marvel argues Count II also encompasses violations of the due process clause of Delaware's Constitution.

14. As to the state law claim in Count IV, the State Defendants concede that the standard of proof required for Marvel's Eighth Amendment claim (i.e., "deliberate indifference") is equivalent to the standard of proof required for Marvel's state law claim for wanton and reckless conduct (i.e., "gross or wanton negligence"). (D.I. 282 at 3.) Since the court finds genuine issues of material fact as to Count I, it follows that there must also be genuine issues of material fact in Count IV. Therefore, the State Defendants' motion as to Count IV will be denied.

15. On the issue of injunctive relief, Marvel seeks to have the court enjoin the State Defendants from retaliating against him for filing and prosecuting this action. Marvel presents no evidence to suggest that the State Defendants are contemplating such retaliation, and therefore, his fear of retaliation is purely speculative. As such, the court will grant the State Defendants' motion insofar as it seeks summary judgment on the issue of the retaliation injunction.[4] Marvel also seeks prospective injunctive relief for vocational training by the State Defendants. He argues that the money for such training would be drawn from Prison

---

[4] The court does not hold that Marvel is precluded from bringing a subsequent suit for retaliation, but merely that an injunction prohibiting retaliation is inappropriate in this case.

Industries, rather than the state coffers. At present, the court is not prepared to foreclose Marvel from the possibility of relief in the form of vocational training. Thus, the court will deny the State Defendants' motion insofar as it seeks summary judgment on the request for a training injunction.

IT IS HEREBY ORDERED THAT:

1. Defendant Prison Industries, Inc. be DISMISSED;

2. Defendants Prison Industries, Inc., Prison Health Services, Inc., and Joyce Talley be REMOVED from the caption of this case;

3. The State Defendants' Motion for Summary Judgment be GRANTED as to Count II and Count III of the Third Amended Complaint;

4. Count II and Count III[5] of the Third Amended Complaint be DISMISSED;

5. The State Defendants' Motion for Summary Judgment be GRANTED on the issue of the retaliation injunction;

6. The State Defendants' Motion for Summary Judgment be DENIED on the issue of the training injunction; and

7. The State Defendants' Motion for Summary Judgment be DENIED as to Count I and Count IV of the Third Amended Complaint.


Dated: March 23, 2005                         /s/ Gregory M. Sleet
                                              UNITED STATES DISTRICT JUDGE

---

[5]Count III was alleged only against Prison Health Services, Inc. ("PHS"). Although PHS was previously dismissed (D.I. 209), Count III was never technically dismissed. The court does so here.